IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EDDIE ROBINSON, A10913, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ILLINOIS DEPT. OF CORR., | ) | Case No. 24-cv-584-DWD |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| DENNIS LARSON, | ) | |
| DEBBIE ISSACS, | ) | |
| JENNIFR BOSLEY, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Eddie Robinson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Big Muddy River Correctional Center (Big Muddy), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants denied him adequate medical care for a foot injury/infection, which led to the surgical amputation of two toes.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture,

the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff's complaint includes a lengthy factual narrative that describes the care he received on an hourly/daily basis from approximately February 24, 2022, through at least March 28, 2022. Many of the allegations relate to individuals that he has not named as defendants, such as nurses and correctional officers who visited his cell to provide medical care or to respond to his queries/grievances about a variety of things. Because many of the factual allegations have no explicit tie to the named defendants, the Court will not recount Plaintiff's allegations at length. Instead, it is sufficient to provide the following high-level overview.

Plaintiff alleges that he had a job at Big Muddy as a janitor, which included cleaning the showers in the H.U. 2 A-wing. Plaintiff realized at some point that the showers had black mold and a bacteria known as staphylococcus aureus. (Doc. 1 at 11). Plaintiff is diabetic, and at some point prior to the allegations in this complaint, Dr. Larson prescribed him a diabetic orthotic shoe that chaffed or irritated his second toe on his left foot. (Doc. 1 at 27-28). With the existing irritation on his toe, it appears that Plaintiff claims he was then more susceptible to infection, and he contracted "foot osteomyelitis," which was diagnosed either before or during a visit to an outside hospital in late February of 2022. (Doc. 1 at 11-12).

Upon return from the hospital to Big Muddy, Plaintiff alleges that he was placed in a medical isolation area that he characterized as punitive isolation in the healthcare

unit, under the apparent guise of a Covid-19 quarantine. (Doc. 1 at 12). In the isolation cell, Plaintiff spent at least a few days without a working shower or hot water, a cloth to properly bath with, a functional window, or his dentures (that he needed to eat). (*Id.*). Plaintiff alleges that Defendant Debbie Issacs intentionally ordered him to be placed in this form of punitive isolation as retaliation for Plaintiff's civil litigation. (Doc. 1 at 29). Plaintiff also alleges that Issacs failed to maintain an appropriate IV machine for the administration of the antibiotic Vancomycin, which he further claims led to poisoning and adverse medical consequences for him. (Doc. 1 at 29).

In the healthcare unit, Plaintiff faced a variety of problems with the care he was receiving, which he describes in a series of interactions with non-parties to this case. Of relevance, he alleges that Defendant Jennifer Bosley was a nurse who was supposed to change the dressings on his foot, but who refused to do so. Plaintiff alleges that Bosley's intentional refusal to treat him led to his gangrene infection and the amputation of his toes. (Doc. 1 at 30-31).

Turning to Defendant Dr. Larson, Plaintiff alleges that Dr. Larson prescribed the size 13 shoes without expertise about orthotics and that the shoes first caused an ulcerated wound on his toe. (Doc. 1 at 28). Larson then prescribed an antibiotic ointment that was contrary to a specialist's recommendation of Betadine. Plaintiff alleges that the wrong ointment either caused or allowed his toes to become seriously infected and led to the amputation. In the body of the complaint, Plaintiff also alleges that upon return to Big Muddy after his amputation he saw Dr. Larson a few times. On March 30, 2022, Dr. Larson changed the medication the hospital had prescribed from oxycodone to navicaine

without giving him a reason. On the same day he claims that he was not allowed to clean himself with a rag or in the shower per orders from Dr. Larson and Debbie Issacs. Plaintiff adds that Dr. Larson knew he had ongoing neuropathy pain in his foot after the issues with his toes, and Larson promised a referral to a neurologist, but to date nothing has been done. (Doc. 1 at 23-24).

Plaintiff faults Defendant Debbie Issacs for refusing him the ability to clean in late March of 2022 when he returned from the hospital. (Doc. 1 at 23). On April 1, 2022, Plaintiff expressed concern about a particular nurse giving him his insulin due to past bad encounters with her, and Issacs allegedly told him via staff that he cannot choose who provides treatment for him. (Doc. 1 at 23). He also alleges that she has intentionally concealed his grievances or has refused to respond to them in an effort to jeopardize his ability to litigate his claims. (Doc. 1 at 24).

As to Wexford, Plaintiff alleges that they should be held liable because they have a contract with IDOC and were responsible for providing adequate care during the time involved in his injuries. He alleges that their shortcomings led to major surgery for him, and that prior to surgery Wexford did not adequately advise him about the seriousness of his condition. (Doc. 1 at 20-21). He also claims that Wexford has not properly followed procedures and regulations from the Illinois Administrative Code about the safety and sanitation to be maintained at IDOC facilities. (Doc. 1 at 26). He further alleges that Wexford failed to investigate or inquire into the situation at Big Muddy after his diagnosis with the foot infection. (Doc. 1 at 27). Plaintiff's allegations against IDOC significantly mirror those against Wexford. (Doc. 1 at 25-26).

As relief Plaintiff seeks significant monetary compensation from each defendant. The Court also notes that throughout the complaint he references a double bypass aorta occlusion surgery that he also had at Barnes Jewish Hospital in late March of 2022 (at or around the same time of his toe amputation). It appears from Plaintiff's allegations that this issue was independent of the foot problems, and Plaintiff does not make any clear allegations about wrongs related to his procedure other than alleging Wexford did not tell him how serious the condition was. Thus, the Court does not discuss this procedure or the related health condition any further.

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendant Jennifer Bosley for refusing to change Plaintiff's foot dressings in March of 2022;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Dr. Larson for his care of Plaintiff's diabetic foot condition, including prescribing the shoes that created the initial wound, his handling of the wound in the lead-up to amputation, and his provision of post-surgical care;**
>
> **Claim 3:** **First Amendment retaliation or Eighth Amendment deliberate indifference claim against Debbie Issacs for her role in responding to Plaintiff's need for care;**
>
> **Claim 4:** *Monell* **claim against Wexford Health Sources Co. for their role in providing care for Plaintiff's foot.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without

prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissal**

Plaintiff named the Illinois Department of Corrections and faulted them for failing to prevent or to care for his injuries, but the IDOC as an entity of the state is not subject to § 1983 claims. *See e.g.*, *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012) (the state and state agencies are not suable "persons" within the meaning of § 1983). Accordingly, IDOC is dismissed with prejudice.

## **Analysis**

### **Claims 1-2**

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific

care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). If an inmate alleges a delay in treatment, he must present verifying medical evidence that the delay, and not the medical condition itself, caused some harm. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). He must also show it was the defendant's actions or inaction that caused the delay in treatment. *Walker*, 940 F.3d at 964.

Plaintiff's allegations against Defendants Bosley and Dr. Larson are sufficient at this juncture to proceed.

**Claim 3**

Plaintiff also alleges that Debbie Issacs, the healthcare unit administrator, played a role in the provision of care for his condition or the lack thereof. He faults Issacs for a variety of things. He alleges that she failed to maintain a proper IV machine which led to his problems with Vancomycin. However, he does not allege that Issacs personally participated in the administration of this IV medication, and even if she did, he admits that staff at the hospital ultimately discovered he was allergic to this medication. Thus, it appears it was an allergy, and not something to do with the maintenance of the IV machine, that ultimately caused problems with this medicine. As such, he cannot make out a claim against Issacs related to the IV machine.

Plaintiff also faults Issacs for her supervision of a group of Jane Doe nurses related to the IV, but there is no supervisory respondeat superior liability under § 1983, so this claim is also insufficient. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014).

Next, he alleges that Issacs had him placed in punitive isolation in the medical wing under false pretenses because he sought to pursue civil litigation. While a retaliation claim can be established if an official retaliates for protected speech, Plaintiff does not identify any particular litigation that he was pursuing at the time that he was placed in isolation when he returned to the prison from outside facilities. Without identifying the actual protected activity at stake, he has not pled any sufficient retaliation claim against Issacs.

He also seeks to pursue a claim against Issacs related to her alleged attempts to obstruct his access to the grievance process by either concealing information or refusing to answer his grievances. There is no right to access the grievance process, and the mishandling of grievances alone is not enough to make out a claim. *See, Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (an official who simply processed or reviewed a grievance lacks personal involvement sufficient to sustain a § 1983 claim). The mere allegation that Issacs has refused to process grievances or has provided inaccurate responses is not enough to proceed against her.

However, if a prison official turns a blind eye or condones or approves of to an inmate's plight that they are alerted to in a highly detailed grievance, or if they refuse to adequately investigate or approve or condone of inadequate treatment, that conduct may give rise to a claim. *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Here, Plaintiff's allegations are less like turning a blind eye, and instead he seems to suggest that Issacs used affirmative misconduct to intentionally obstruct a thorough investigation into his issues, to hinder a resolution, or to prevent him from seeking redress at higher

levels.  If turning a blind eye to grievances or refusing to investigate might be a basis for an Eighth Amendment claim, then it also seems plausible that using affirmative misconduct to hinder a thorough investigation might also amount to deliberate indifference.  Issacs role, as the healthcare unit administrator, is important to this claim because it is fair to assume at this early juncture that she had greater control over Plaintiff's situation and his access to care than other prison administrators who do not work with the medical unit.  Accordingly, the Court will allow Plaintiff to proceed on Claim 3 against Defendant Issacs on his allegations that she intentionally tried to obstruct his ability to seek care or recourse for his situation either via the grievance procedure or otherwise.

**Claim 4**

Plaintiff named Defendant Wexford Health Sources at the outset of the complaint, and he alleges that Wexford is responsible because they have a contract to provide medical care in IDOC, and while in IDOC he sustained injuries.  Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.  *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority.  *Dean v. Wexford Health*

*Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).  At most, Plaintiff faults Wexford for failing to follow pre-existing state laws or regulations about sanitary conditions at the prison, but the violation of a state regulation is not sufficient to state a claim.  Plaintiff does not identify any independently policies, practices or customs held by Wexford that led to his injuries.  Accordingly, his complaint is insufficient to state a claim against Wexford.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant Jennifer Bosley; **Claim 2** survives against Defendant Dennis Larson; **Claim 3** survives against Defendant Debbie Issacs.  By contrast, **Claim 4** is dismissed in full as to Wexford.  Additionally, any claim against the Illinois Department of Corrections is dismissed with prejudice because the entity is not a person subject to suit under § 1983.  The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Wexford Health Sources and IDOC.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Jennifer Bosley, Dennis Larson, Debbie Issacs: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect

formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: April 1, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.